UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAIME PRIETO LOMELI,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC, et al.,<br><br>Defendants. | Case No. 19-CV-01141-LHK<br><br>**ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND STAYING CASE**<br><br>Re: Dkt. Nos. 42, 51 |

This is a putative class action brought by Plaintiff Jamie Lomeli against Midland Funding, LLC ("Midland Funding"), Midland Credit Management, Inc. ("MCM"), Hunt & Henriques ("H&H"), Michael Scott Hunt, and Janalie Ann Henriques (collectively, "Defendants"). Plaintiff alleges that Defendants committed violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* in connection with Defendants' efforts to collect a consumer debt from Plaintiff. Before the Court are Defendants' motions to compel arbitration. ECF Nos. 42, 51. Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby grants the motions to compel arbitration and stays the action.

I.      **BACKGROUND**

   A.  **Factual Background**

1

United States District Court
Northern District of California

The following facts come from several sources, including the Complaint and the evidence Defendants have submitted in support of their motions. The Court focuses upon the undisputed facts and notes which facts come only from the moving parties, Defendants.

This lawsuit stems from a debt collection action brought by Defendants against Plaintiff. In 2004, Plaintiff opened a Shell credit card with Citibank, N.A. ("Citibank"). ECF No. 51-2, Ex. A ("Peck Decl.") ¶ 9; *see also* ECF No. 1 ("Compl.") ¶ 13. Defendants aver that the card was subject to a written card agreement ("Card Agreement"), which set forth the terms and conditions for the credit card account. Peck Decl. ¶ 7, Ex. 1. According to Defendants, it is Citibank's regular business practice to send the applicable card agreement to the customer when the account is opened.

The Card Agreement contains three provisions relevant to the instant motions: (1) an arbitration agreement, (2) a choice of law provision, and (3) an assignment clause. As to the arbitration agreement, the Card Agreement proffered by Defendants states:

> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.
>
> *Agreement to Arbitrate.* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

ECF No. 42-1, Ex. 1 ("Card Agreement") at 4. The Card Agreement elaborates on the claims covered by the arbitration clause and explains how arbitration works. *Id.* In particular, a section titled "What Claims are subject to arbitration?" clarifies that "[a]ll Claims relating to your account" are subject to arbitration, "including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision." *Id.* Additionally, there is a section titled "Whose Claims are subject to arbitration?" which states:

Case No. 19-CV-01141-LHK
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND STAYING CASE

Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

*Id.*

Second, the Card Agreement contains the following choice of law provision: "Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement." *Id.* at 5.

Lastly, the purported assignment clause states: "We may assign any or all of our rights and obligations under this Agreement to a third party." *Id.*

At some point, Plaintiff allegedly incurred a debt on his credit card. Compl. ¶ 13. He subsequently defaulted on the debt. *Id.* ¶ 14. On May 25, 2016, Midland Funding, LLC ("Midland Funding"), purchased Plaintiff's debt from Citibank. *Id.* ¶ 14; Peck Decl. ¶ 12. Defendants proffer what they assert is the Purchase and Sale Agreement (the "Purchase Agreement") assigning Plaintiff's account to Midland Funding and containing the terms of the transaction. *See* ECF No. 42-1, Ex. A to Ex. C; ECF No. 51-2, Ex. A to Ex. B ("Purchase Agreement"). The Purchase Agreement states that Citibank "agrees to sell, assign and transfer" to Midland Funding "all right, title and interest of Bank in and to the Accounts." *Id.* at 2. According to Defendants, Midland Credit Management, Inc. ("MCM") is "the servicer and authorized agent for Midland Funding and manages debts that Midland Funding purchases," which Plaintiff does not dispute. ECF No. 51-2, Ex. B ("Mulcahy Decl.") ¶ 2.

H&H is a company[1] "engaged in the collection of outstanding financial obligations." ECF No. 28 ("H&H Def. Answer") ¶ 9. At some point after Plaintiff defaulted, H&H was retained by Midland Funding for the purpose of collecting Plaintiff's outstanding credit card debt. Compl. ¶ 16-17. On or about October 16, 2017, Midland Funding filed suit against Plaintiff in Santa Clara Superior Court in order to collect Plaintiff's debt. *Id.* ¶ 17; *Midland Funding, LLC v. Jamie*

---

[1] H&H states that it is a general partnership, and that Defendants Michael Hunt and Janalie Ann Henriques are general partners of H&H. H&H Def. Answer ¶¶ 10, 11.

*Prieto, et al.*, No. 17-CV-317436 (Cal. Super. Ct. 2017). Defendants state that H&H filed the suit

on Midland Funding's behalf. *See* ECF No. 51-1 at 2; ECF No. 42-1 at 3. In connection with that

suit, Emily Walker executed a Declaration in Lieu of Testimony as an officer for Midland

Funding. Compl. Ex. 1. In the Declaration, Walker indicated that her business address is 16

McLeland Road Suite 101, St. Cloud, Minnesota, 56303. *Id.*

### B. Procedural History

On February 28, 2019, Plaintiff filed the Complaint in the instant case. ECF No. 1. In his

Complaint, Plaintiff alleges that the Declaration in Lieu of Testimony is invalid because Walker's

address "is located more than 150 miles from the place of trial" and that Defendant's attempt to

use the Declaration in Lieu of Testimony "is false, misleading, and unconscionable." Plaintiff

therefore asserts a claim under the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692

*et seq.* ("FDCPA") on behalf of himself and all others similarly situated.[2] Compl. at 1, ¶¶ 50-63.

On June 25, 2019, Midland Funding and MCM (collectively, the "Midland Defendants")

filed a Motion to Compel Arbitration. ECF No. 42 ("Midland Def. Mot. to Compel"). H&H,

Hunt, and Henriques (collectively, the "H&H Defendants") joined in that motion on July 22, 2019.

ECF No. 52. On the same day, the H&H Defendants also filed their own Motion to Compel

Arbitration. ECF No. 51 ("H&H Def. Mot. to Compel"). Plaintiff opposed both motions. *See*

ECF Nos. 49, 57. The two Motions to Compel Arbitration have been fully briefed, ECF Nos. 42,

49, 50, 52, 57, 59, and are now before the Court.

Relevant here, both the Midland Defendants and the H&H Defendants filed redacted

versions of the exhibits attached to their Motions to Compel Arbitration. Therefore, on September

18, 2019, the Court ordered Defendants to produce the complete, unredacted Purchase Agreement

to Plaintiff, ECF No. 73, and Defendants complied on September 19, 2019, ECF No. 74. In its

---

[2] The introduction in Plaintiff's Complaint states, "This is a consumer class action brought pursuant to the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p . . . and the California Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.83." However, the Complaint does not include the California claim in its section "IX. Claims" or otherwise mention the California claim elsewhere in the Complaint.

4

order, the Court gave Plaintiff an opportunity to file a supplemental briefing based upon the unredacted Purchase Agreement, and Defendants an opportunity to respond to Plaintiff's supplemental brief. ECF No. 73 at 2. Plaintiff declined to file a supplemental brief. ECF No. 78.

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) (referencing 9 U.S.C. § 2). Courts must therefore "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation marks omitted). In particular, the Act provides that suits brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" must be stayed "until such arbitration has been had . . . , providing the applicant for the stay is not in default in proceeding with such arbitration" and the court has been "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. The United States Supreme Court has emphasized that the Act speaks in mandatory terms. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

This command only comes into play, however, when there is an enforceable arbitration agreement. *Italian Colors*, 570 U.S. at 233 ("[A]rbitration is a matter of contract."). "Accordingly, the first task of a court asked to compel arbitration . . . is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Specifically, the court's role is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court is satisfied that the answer to both questions is yes, then "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

In some cases, however, the second question—"whether the parties have submitted a particular dispute to arbitration"—is beyond the court's domain. *Howsam v. Dean Witter*

Case No. 19-CV-01141-LHK
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND STAYING CASE

United States District Court
Northern District of California

*Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted). The parties can delegate threshold questions of arbitrability to the arbitrator through a "delegation provision." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010). The parties must demonstrate "clearly and unmistakably" that it is their intent to do so. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Howsam*, 537 U.S. at 83). If the delegation provision is valid and enforceable, then the Court must refer the case to arbitration. *See Brennan v. Opus Bank,* 796 F.3d 1125, 1132 (9th Cir. 2015). Of course, a delegation provision "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce," *Rent-A-Ctr.*, 561 U.S. at 70, and the court must assure its existence and validity as the court would any other purported arbitration agreement.

In determining the existence and validity of an agreement to arbitrate, "a court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (internal quotation marks omitted). The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Accordingly, a court should grant the motion to compel arbitration only "when there is no genuine issue of material fact concerning the formation of an arbitration agreement." *Concat,* 350 F. Supp. 2d at 804.

To briefly review the Rule 56 standard, the court at the summary judgment stage "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Moreover, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty*

United States District Court
Northern District of California

*Lobby*, 477 U.S. at 255. The nonmoving party's opposition, however, must consist of more than unsupported allegations or denials. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). It must, through affidavits, declarations, or other competent evidence, set forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; *see* Fed. R. Civ. P. 56(e). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. (citations omitted).

As for interpretive issues, courts generally should apply state law principles of contract interpretation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). At the same time, though, the FAA creates a body of federal substantive law of arbitrability that requires a "healthy regard for the federal policy favoring arbitration" and preempts state law to the contrary. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-79 (1989). Hence, in determining whether parties have agreed to arbitrate a particular issue, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

## III. DISCUSSION

Defendants seek to enforce the arbitration agreement contained in the Card Agreement, which they claim covers Plaintiff's account. In response, Plaintiff makes three principle arguments against arbitration. First, Plaintiff challenges the authenticity of the document that Defendants have proffered as the Card Agreement, as well as its connection to Plaintiff's account. ECF No. 49 ("Opp. to Midland Def. Mot.") at 3; ECF No. 57 ("Opp. to H&H Def. Mot.") at 6. Second, Plaintiff argues that Midland Funding and the H&H Defendants are not entitled to enforce the arbitration provision. Opp. to H&H Def. Mot. at 3. Third, Plaintiff contends Defendants have "constructively waived any rights they had under the arbitration agreement." *Id.* at 13; Opp. to Midland Def. Mot. at 11. Plaintiff does not otherwise challenge the validity of the arbitration clause in the Card Agreement or that the substantive claims in his Complaint are within the scope

7

of the clause.  Accordingly, the Court limits its analysis to determining whether the proffered

arbitration clause exists and applies to Plaintiff's account, whether all Defendants may enforce the

arbitration clause, and whether Defendants have waived their rights to arbitrate.

### A. Authenticity of the Card Agreement

As the moving party, Defendants bear the burden of establishing the existence of a valid

agreement to arbitrate.  Defendants submit the Card Agreement as the relevant agreement.

Plaintiff contends that Defendants cannot authenticate the Card Agreement, and so cannot enforce

the arbitration agreement contained therein.  Specifically, Plaintiff argues "there is no evidence

that Defendants' purported Card Agreement is what it claims to be," including that the Card

Agreement applies to Plaintiff's account.  Opp. to Midland Def. Mot. at 3-6.  Plaintiff does not,

however, dispute that he opened a credit card account with Citibank or that the account may have

been subject to certain terms and conditions.  In other words, Plaintiff's arguments amount to an

evidentiary challenge to the evidence and declarations Defendants proffer to establish that this

particular Card Agreement governs Plaintiff's account.  As set out below, the Court rejects

Plaintiff's objections and finds that Defendants have met their burden of establishing the existence

of a valid agreement to arbitrate.

Before documentary evidence may be considered, Federal Rule of Evidence 901(a)

requires a proper foundation be laid to authenticate the item by "evidence sufficient to support a

finding that the item is what the proponent claims it is." *See Canada v. Blain's Helicopters, Inc.*,

831 F.2d 920, 925 (9th Cir. 1987); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th

Cir. 2002) ("[U]nauthenticated documents cannot be considered in a motion for summary

judgment").  Such a foundation may be laid by testimony of a witness who has personal

knowledge. Fed. R. Evid. 901(b)(1).  In addition, the contents of the document must be

admissible as nonhearsay evidence or under one or more of the exceptions to the hearsay rule.

Here, Defendants invoke Federal Rule of Evidence 803(6), the business records exception to the

hearsay rule.  ECF No. 50 ("Midland Def. Reply") at 4; ECF No. 59 ("H&H Def. Reply") at 4.

Rule 803(6) has its own foundation requirements: A "qualified witness" must testify that "(A) the

8

record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . . ; (C) making the record was a regular practice of that activity." Fed. R. Evid. 803(6)(A)-(D); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 514 (9th Cir. 1989), *as amended on denial of reh'g and reh'g en banc* (Sept. 19, 1989).

Defendants offer two declarations to authenticate the Card Agreement: the declaration of William Peck, a Document Control Officer for Citibank, *see* ECF No. 51-2, Ex. A; and the declaration of Sean Mulcahy, an employee of MCM, *see* ECF No. 51-2, Ex. B. Peck testified that he is a custodian of records for Citibank, and that the proffered Card Agreement is a copy of the one mailed to Plaintiff. Peck Decl. ¶¶ 4, 8. According to Peck, it is Citibank's regular business practice to mail a card agreement to customers at the time of the opening of an account. *Id.* ¶ 10. Peck further testified that it was and is Citibank's regular business practice "to include a note in cardmembers' computerized account records when mail is returned undeliverable," and that no such note exists for Plaintiff's account. *Id.* ¶ 11.

Sean Mulcahy, an employee of MCM, testified that he is responsible for maintaining all account information pertinent to accounts and debts that MCM manages, which includes records that MCM receives from the original issuer and then incorporates into MCM's own business records. Mulcahy Decl. ¶¶ 3, 5. Mulcahy then testified that the records Citibank transferred to MCM for Plaintiff's account included the proffered Card Agreement. *Id.* ¶ 9.

Plaintiff challenges the sufficiency of these declarations to authenticate the Card Agreement on several counts, and the Court rejects them all.

First, Plaintiff complains that "there is no evidence" that Peck is a qualified witness other than his own "bald assertion" that he is a custodian of records for Citibank. Opp. to H&H Def. Mot. at 8. The Ninth Circuit has "set a low bar" for what constitutes a "qualified witness" within the meaning of Rule 803(6). *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015), *aff'd*, 692 F. App'x 900 (9th Cir. 2017). "The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." *United States*

*v. Ray*, 930 F.2d 1368.  Thus, Rule 803(6)'s foundation requirement "may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation."  *Miller*, 885 F.2d at 514.  Furthermore, the testimony of the purportedly qualified witness is sufficient evidence to support a finding that he is qualified.  *Id.*

In the instant case, Plaintiff has given the Court no reason to second guess Peck's testimony.  The Court therefore accepts Peck's testimony that he is a "duly authorized custodian of records of Citibank and, in that capacity, [he] [has] personal knowledge of the records made and maintained by Citibank and its affiliates with respect to cardmember accounts."  Peck Decl. ¶ 4.  The same is true of Mulcahy, though Plaintiff does not challenge his qualifications.  Mulcahy testified that he is "responsible for maintaining and overseeing MCM's 'media,' i.e., the account purchase and transfer information, debt collection records, correspondence and other account information pertinent to accounts and debts that MCM manages."  Mulcahy Decl. ¶¶ 3-4.  The Court finds that both Mulcahy and Peck are qualified witnesses.

Second, Plaintiff objects that neither Mulcahy nor Peck state in their declarations how, when, or by whom the Card Agreement was "made."  Opp. to H&H Def. Mot. at 7.  It is true that the declarations do not specify precisely how, when, or by whom the Card Agreement was prepared.  But there is no requirement that Defendants provide that information in order to satisfy Rule 803(6).  *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991); *see also United States v. Bland*, 961 F.2d 123, 127 (9th Cir. 1992) ("The fact that Fredrickson did not complete Exhibit 13 himself, and his failure to identify either the specific person who completed Exhibit 13 or when that person completed it, do not keep Exhibit 13 from being a business record.").  Defendants did not create the Card Agreement; non-party Citibank did.  In this circuit, "records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the

10

United States District Court
Northern District of California

records." *MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998). Here, Plaintiff does not dispute that his debt was sold to Midland Funding. Plaintiff also does not dispute that (1) Mulcahy is a custodian of records; (2) Mulcahy's testimony establishes that MCM received the Card Agreement for Plaintiff's account directly from Citibank, Mulcahy Decl. ¶ 9; and (3) that MCM maintains the Card Agreement in its files, as it does all documents associated with the accounts that it purchases, *id.* ¶ 5. Mulcahy further testifies that MCM relies upon the Card Agreement in conducting its business of collecting debts, *id.*, which suffices to show that MCM had a substantial interest in the accuracy of the account records. *See Davis v. CACH, LLC*, No. 14-CV-03892-BLF, 2015 WL 913392, at *5 (N.D. Cal. Mar. 2, 2015) ("CACH testifies through Ms. Livits' supplemental declaration that it received the Cardmember Agreement directly from Capital One, maintains the agreement in its files, and relies upon the Agreement in conducting its business of collecting debts."). The Court therefore rejects Plaintiff's objection.

Third, Plaintiff argues that Defendants have not tied the Card Agreement to Plaintiff's particular account. Plaintiff states, "Defendants have produced a portion of a generic Card Agreement, unsigned by Plaintiff, with no reference to Plaintiff or Plaintiff's account" with Citibank. Opp. to H&H Def. Mot. at 9. The Card Agreement does not refer to Plaintiff's account, but again, that is not necessary for authentication. Mulcahy testified that MCM received the Card Agreement directly from Citibank in connection with its purchase of Plaintiff's account. This testimony alone is strong evidence that the Card Agreement applies to Plaintiff's account. *See Davis*, 2015 WL 913392, at *5 (finding a connection between the Cardmember Agreement and Plaintiff's account based on testimony that "the Cardmember Agreement was provided to CACH by Capital One following a request for documents related to Ms. Davis' account" and the handwritten account number on the Card Agreement).

Peck's testimony further bolsters Defendants' authentication. Peck testified that the Card Agreement was the one mailed to Plaintiff, and that there was no record of the mailing being undeliverable. Although Peck does not have personal knowledge of the mailing, Peck stated that it is Citibank's regular business practice to mail a new card agreement to customers at the time of

United States District Court
Northern District of California

the opening of an account. The Ninth Circuit has said that mailing may be established through evidence that a document is "customarily mailed in the ordinary course of [the sender's] business." *United States v. Putnam*, 908 F.2d 978 (9th Cir. 1990). In *Putnam*, the court upheld the district court's finding that Putnam received the document where "Putnam does not contest that the order was mailed to him, nor does he expressly deny having received it." *Id.* Likewise, in the instant case, Plaintiff does not expressly deny receiving the Card Argument; his sole argument is that Defendants have failed to prove he received it. Opp. to H&H Def. Mot. at 11. On top of that, Peck testified that the Card Agreement was not recorded as undeliverable. The Court therefore concludes that Peck has provided sufficient foundation for his testimony that the Card Agreement was the one mailed to Plaintiff. Together, then, Mulcahy's and Peck's declarations authenticate the Card Agreement as to Plaintiff's specific account.

That the declarations are hearsay, Opp. to H&H Def. Mot. at 9, is of no moment. At the summary judgment stage—and thus on a motion to compel arbitration, *see Concat LP*, 350 F. Supp. 2d at 804,—the Court "does not 'focus on the admissibility of the evidence's form,'" so long as the contents are capable of presentation in an admissible form at trial. *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017 WL 7388530, at *4 (C.D. Cal. Oct. 26, 2017) (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003)); *accord Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (district court could base its grant of summary judgment in part on government employee's affidavit despite hearsay and best evidence rule objections). Defendants need not rely upon the declarations at trial; they can simply have the declarants testify. Mulcahy, for one, already indicated that he "could and would testify" to the matters set forth in his declaration. Mulcahy Decl. at ¶ 5. The Court therefore rejects Plaintiff's hearsay objection.

Finally, Plaintiff argues that the Court may not rely upon the Peck Declaration because it violates the best evidence rule, Federal Rule of Evidence 1002. According to Plaintiff, Peck testifies to having reviewed "the records of" Plaintiff's account, but never produces those records. Opp. to H&H Def. Mot. at 9. Plaintiff believes this violates Rule 1002's command that "[a]n original writing, recording, or photograph is required in order to prove its contents." Fed. R. Evid.

12

1002. However, it is not clear to which records Plaintiff refers. As established above, Defendants do not rely upon Peck's testimony to prove the contents of the Card Agreement. Both Peck—a custodian of records for Citibank—and Mulcahy—a custodian of records for MCM—attach a copy of the Card Agreement from their respective organizations' records to their declarations. Defendants proffer these identical copies of the Card Agreement in order to prove its contents, as permitted by Federal Rule of Evidence 1003. Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."). Peck's testimony simply "provides authentication that the documents are what they purport to be"—which Plaintiff readily acknowledges is proper. *See* Opp. to H&H Def. Mot. at 10.

It is true, however, that Peck testified to the absence of a record that the Card Agreement was undeliverable, in order to show that the Card Agreement was successfully mailed to Plaintiff. *See* Fed. R. Evid. 803(7) (hearsay exception for "Absence of a Record of a Regularly Conducted Activity"). To the extent Plaintiff believes this testimony violates the best evidence rule, he is incorrect. As Defendants point out, "[t]he best evidence rule applies when the contents of a writing are sought to be proved, not when records are searched and found not to contain any reference to the designated matter." *United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1035 (9th Cir. 2011). After all, no record of undeliverability exists and thus one cannot be produced. There has therefore been no violation of the best evidence rule.

In sum, the Court finds that Defendants have satisfactorily established the authenticity of the Card Agreement as the terms governing Plaintiff's account. The Court therefore concludes that the arbitration provision contained therein—the validity of which Plaintiff does not dispute—is a valid agreement to arbitrate.

## B. Defendants' Rights to Enforce the Agreement to Arbitrate

Plaintiff argues that even if a valid agreement to arbitrate exists between Plaintiff and Citibank, not all of the Defendants in the instant case may invoke the right to compel arbitration. First, Plaintiff objects to Midland Funding's failure to produce the complete Purchase Agreement

13

showing precisely which rights were transferred from Citibank to Midland Funding.  Opp. to

Midland Def. Mot. at 10.  In particular, Plaintiff wonders if the complete version of the document

"may show that any right to arbitration was waived by Midland Funding, LLC." *Id.*  Second,

Plaintiff argues that the H&H Defendants, as an "assignee's agent," are non-signatories to the

Card Agreement and therefore cannot enforce it.  Opp. to H&H Def. Mot. at 5.

Before delving into the merits, the Court addresses two preliminary matters.  First, the

Court decides these issues rather than deferring to an arbitrator, even though Defendants believe

the Card Agreement contains a delegation provision.  That is because "the threshold issue of

whether the delegation clause is even applicable to a certain party must be decided by the Court."

*Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. 2012); *see also In re Midland*

*Credit Mgmt., Inc. Tel. Consumer Prot. Litig.*, No. 11MD2286-MMA (MDD), 2019 WL 398169,

at *6 (S.D. Cal. Jan. 31, 2019) (following *Soto* and deciding whether Defendants have standing to

compel arbitration notwithstanding a valid delegation clause).  Moreover, neither party opposes

having the Court rather than an arbitrator determine Defendants' rights to enforce the arbitration

agreement.

Second, all parties apply South Dakota law in their briefs, *see* Opp. to H&H Def. Mot. at 3;

Midland Def. Reply at 6 n.1; H&H Def. Reply at 5 n.1, per the choice of law provision in the Card

Agreement.[3]  The Court is also satisfied that applying South Dakota law accords with federal

choice of law rules, which govern here because jurisdiction is based upon federal question

jurisdiction.  *See Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006).  Federal

common law provides that courts should honor the parties' choice of law unless "'the chosen state

has no substantial relationship to the parties or the transaction and there is no other reasonable

basis for the parties' choice' or 'application of the law of the chosen state would be contrary to a

fundamental policy of a state which has a materially greater interest than the chosen state in the

determination of the particular issue' and that state would be the state of applicable law in the

---

[3] The provision states: "Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement."

absence of a choice-of-law clause." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997) (quoting the Restatement (Second) of Conflicts of Law § 187(1) (1988)). Citibank is headquartered in South Dakota, so the credit on Plaintiff's account extends from South Dakota. Peck Decl. ¶ 2. The Court therefore finds that South Dakota has a substantial relationship to this dispute and application of South Dakota law would not be contrary to any fundamental policy of California. *Accord In re Midland Credit Mgmt.*, 2019 WL 398169, at *4 (concluding the same). Accordingly, South Dakota law provides the substantive contract law principles.

### 1. Midland Funding

The Midland Defendants, of course, assert that Midland Funding has the right to compel arbitration. Specifically, the Midland Defendants contend that Midland Funding is the express assignee of Citibank, and as such possesses all of Citibank's rights under the Card Agreement—including the right to compel arbitration. The Court agrees.

Plaintiff does not dispute that Midland Funding purchased Plaintiff's account from Citibank; indeed, he alleges as much in his Complaint. The Purchase Agreement—the authenticity of which Plaintiff does not dispute—provides that Citibank transfers to Midland Funding "all right, title and interest of [Citibank] in and to the Accounts" and that Midland Funding "will assume . . . all of [Citibank]'s rights, responsibilities, and obligations that arise as a result of [Midland Funding's] purchase of the Accounts." Purchase Agreement at 2-3. Under South Dakota law, "an assignee [secured party] takes the right assigned subject to all terms of the agreement between the account debtor [buyer] and the assignor [seller]." *Consol. Nutrition, L.C. v. IBP, Inc.*, 669 N.W.2d 126, 134 (S.D. 2003) (brackets in original). In acquiring Plaintiff's account, then, Midland Funding also acquired all of Citibank's rights and obligations under the Card Agreement. *See Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 815 (S.D. 2002) (finding that Mylan, as the purchaser of an original signatory, was the successor to the signatory and as such was covered by the arbitration clause); *accord In re Midland Credit Mgmt.*, 2019 WL 398169, at *4 (finding the same based upon almost identical evidence). This view is consistent with the Card Agreement's assignment clause, which states, "We may assign any or all of our

Case No. 19-CV-01141-LHK
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND STAYING CASE

rights and obligations under this Agreement to a third party." It is also consistent with the Card

Agreement's express provision—discussed at greater length below—stating that claims "by or

against" an "assignee" of Citibank are subject to arbitration. *See* Card Agreement at 4.

Plaintiff's principal objection is that some portion of the redacted Purchase Agreement

might contain a waiver of Midland Funding's right to arbitrate. Opp. to Midland Def. Mot. at 10.

However, on September 18, 2019, the Court ordered Defendants to produce the complete,

unredacted Purchase Agreement to Plaintiff, and Defendants duly complied. Thus, Plaintiff's

request to "adjourn this motion" until Plaintiff could seek production of the entire Purchase

Agreement, *see* Opp. to Midland Def. Mot. at 10, is moot. Moreover, Plaintiff declined to submit

supplemental briefing after receiving the unredacted Purchase Agreement, ECF No. 78, so the

Court concludes that Plaintiff's suspicion about a potential waiver failed to bear out.

Meanwhile, as just explained, the information cited by Defendants is sufficient to meet

their burden of showing that Midland Funding may enforce the arbitration agreement. The Court

therefore finds that Midland Funding has the right to compel arbitration under the Card

Agreement.

### 2. The H&H Defendants

Plaintiff contends that the H&H Defendants cannot enforce the agreement to arbitrate

between Plaintiff and Citibank based upon the Third Circuit's decision in *Orn v. Alltran Fin., L.P.*,

No. 18-3802, 2019 WL 3061530 (3d Cir. July 12, 2019). There, the court rejected Alltran's

attempt "to invoke Citibank's arbitration agreement with its customers as a third-party beneficiary

or as Citibank's agent." *Id.* at *2. Plaintiff argues that the H&H Defendants, as non-signatories

and non-assignees to the Card Agreement, likewise cannot assert the arbitration clause against

him.

Under South Dakota law—as under the law of most states—"[t]he goal of contract

interpretation is to determine the parties' intent." *Tri-City Assocs., L.P. v. Belmont, Inc.*, 845

N.W.2d 911, 915 (S.D. 2014). Courts must "interpret the contract to give a reasonable and

effective meaning to all its terms" and not to "render[] a portion of the contract meaningless." *Tri-*

16

*City Assocs., L.P. v. Belmont, Inc.*, 845 N.W.2d 911 (S.D. 2014) (internal quotation marks and alterations omitted). Here, the arbitration agreement in the Card Agreement states the following, in a section entitled, "Whose Claims are subject to arbitration?":

> Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

The "us," of course, refers to Citibank, the original signatory to the agreement. The arbitration provision further states that it is to be interpreted "in the broadest way the law will allow it to be enforced." Card Agreement at 4. In other words, the Card Agreement explicitly extends the right to arbitrate to a wide-range of entities "connected with" or "claiming through" the parties, including but not limited to "agents" and "assignees."

Plaintiff apparently concedes that the H&H Defendants, as the debt collector, are "agents" of Midland Funding. Opp. to H&H Def. Mot. at 5. The Court has already concluded that Midland Funding, as Citibank's assignee, now possesses all Citibank's rights under the Card Agreement, including the right to compel arbitration. Considering the breadth of the "Whose Claims are subject to arbitration?" provision, the H&H Defendants easily fall within the category of entities "claiming through" Citibank, albeit by way of Midland Funding. Indeed, Midland Funding could be seen as standing in the shoes of Citibank as a party to the agreement, such that the H&H Defendants are directly "agents" within the meaning of the provision. Furthermore, to the extent any doubt persists—though the Court sees none—the Court is mindful that it must "resolv[e] ambiguities as to the scope of arbitration in favor of arbitration" under both the FAA, *Mundi*, 555 F.3d at 1044, and the Card Agreement's own "broadest interpretation" clause.

Plaintiffs nevertheless contend that *Alltran* compels a different conclusion. At the outset, the Court notes that *Alltran* was decided by the Third Circuit, and is not binding upon this Court. The Court acknowledges that *Alltran* bears many similarities to the instant case. Alltran, like H&H, is a debt collector for Citibank, one of the parties to the purported arbitration agreement. There, too, the agreement contained a clause providing that all "claims made by or against anyone

connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative, or an affiliated/parent/subsidiary company" are subject to arbitration. 2019 WL 3061530 at *1 (emphasis added). Nevertheless, the Court cannot agree with the Third Circuit's analysis. The Third Circuit first applied a theory of third-party beneficiary enforcement, which "requires the non-signatory to show that the parties would not have executed the agreement unless they intended to benefit the third party." *Id.* at *2. The Third Circuit found that requirement was not satisfied. *Id.* The Third Circuit then determined that, in its view, South Dakota law lacked a "freestanding agency theory of third-party enforcement." *Id.* Instead, the Third Circuit applied South Dakota's test for equitable estoppel to determine whether Alltran could enforce the arbitration clause based on its role as Citibank's agent and concluded the answer was no. *Id.* at *3.

In the instant case, the Court does not believe that the third-party beneficiary framework is appropriate for evaluating the parties' intent as to who may compel arbitration where the agreement contains an explicit provision prescribing who may compel arbitration. *Accord In re Midland Credit Mgmt.*, 2019 WL 398169, at *6 (applying South Dakota law but not applying the third-party beneficiary framework to determine whether a nonsignatory may enforce an arbitration clause in Citibank's card agreement). The Court sees no reason why an entity must be a third-party beneficiary in order to enforce an arbitration clause. Again, the ultimate "goal of contract interpretation is to determine the parties' intent," *Tri-City Assocs.*, 845 N.W.2d at 915; application of the third-party beneficiary framework here does not serve that goal. As explained above, the Court holds that the Card Agreement unmistakably manifested the parties' intent to give entities "claiming through" the parties to the agreement the right to compel arbitration. To ignore the agreement's express command would render it meaningless.

As for equitable estoppel, the Court finds that here, unlike in *Alltran*, the doctrine bolsters the Court's conclusion that Plaintiff's claims against the H&H Defendants are subject to arbitration. Under South Dakota law, equitable estoppel permits arbitration of claims against nonsignatory defendants if "all the claims against the nonsignatory defendants are based on

18

alleged substantially interdependent and concerted misconduct by both the nonsignatories and one or more of the signatories to the contract." *Rossi*, 648 N.W.2d at 815; *see also Alltran*, 2019 WL 3061530 at *3. The *Alltran* court rejected equitable estoppel because the allegations against Alltran did not amount to allegations of misconduct by Citibank. 2019 WL 3061530 at *3.

Here, by contrast, Plaintiff is suing the H&H Defendants based solely upon conduct committed by Midland Funding, which has an independent right to invoke the arbitration agreement. Specifically, Plaintiff's FDCPA claim is based upon a Declaration in Lieu of Testimony that Midland Funding filed in the state court debt collection proceeding against Plaintiff. The H&H Defendants are alleged only to have filed the state court suit on Midland Funding's behalf. Plaintiff has no claims against the H&H Defendants that do not arise from the actions of the Midland Defendants. The Court thus "has little problem finding that the inquiries are intertwined" when arbitration of Plaintiff's claims against the Midland Defendants "will be determinative" of Plaintiff's claims against the H&H Defendants. *Keane v. 40 Years, Inc.*, No. C18-1768 RSM, 2019 WL 4014769, at *7 (W.D. Wash. Apr. 11, 2019).

The Court therefore holds that the H&H Defendants, like Midland Funding, are entitled to invoke the arbitration clause.

### 3. MCM

Like the H&H Defendants, MCM is neither a signatory nor an assignee. Consequently, one might expect Plaintiff to bring arguments similar to the ones just discussed against MCM. Yet, Plaintiff does not separately contest MCM's right to compel arbitration. The Midland Defendants assert and Plaintiff does not dispute that MCM may compel arbitration due to its relationship with Midland Funding. The Midland Defendants say that MCM is an "affiliate" of Midland Funding. The same provision of the Card Agreement conferring the right to arbitrate to "agents" and "assignees" also covers "affiliated companies." Moreover, Plaintiff alleges in his Complaint that Midland Funding "has no employees and only acts through the agents and employees of MCM." Compl. ¶ 15. The Court is therefore satisfied that its analysis regarding the parties' intent and the applicability of equitable estoppel as to the H&H Defendants has equal

19

force here, and confirms MCM's right to compel arbitration.

## C. Constructive Waiver

Finally, Plaintiff argues that "by choosing to sue Plaintiff in the state court action" to collect Plaintiff's debt, "Defendants have constructively waived any existing right to arbitrate" Plaintiff's present suit. Opp. to Midland Def. Mot. at 11.

At the outset, the Court determines that the question of waiver by litigation is for the Court to decide. The Ninth Circuit has made clear that "the question whether a party waived its right to arbitrate on the basis of its litigation conduct is a question of arbitrability." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016). It is therefore presumptively for a court to decide unless "clearly and unmistakably" delegated to the arbitrator. *Id.* In the instant case, Defendants believe the Card Agreement contains a delegation provision stating that all "Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision" are "subject to arbitration." However, Defendants do not invoke it as to the question of waiver by litigation. In any event, the Ninth Circuit and this Court have both previously found that language broadly delegating issues of "enforceability" is not sufficient to "clearly and unmistakably delegate the waiver question to the arbitrator." *Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540-LHK, 2018 WL 6505997, at *7 (N.D. Cal. Dec. 11, 2018); *Martin*, 829 F.3d at 1124. The Court therefore finds that the Court and not an arbitrator must rule on Plaintiff's waiver argument.

The Court now turns to the waiver analysis. "The right to arbitration, like other contractual rights, can be waived." *Martin*, 829 F.3d at 1124 (internal quotation marks omitted). However, a determination of whether "the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Because waiver of the right to arbitration is disfavored, "any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (internal quotation marks omitted). Specifically, "a party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting

20

from such inconsistent acts.'" *Martin*, 829 F.3d at 1124 (internal quotation marks omitted).

Here, Plaintiff contends that Defendants waived their right to arbitrate the instant case by bringing the debt collection action in California Superior Court rather than arbitrating that action. In response, Defendants convincingly argue that the act of filing the debt collection action in state court was not "inconsistent" with the right to arbitrate, as is necessary to meet the second requirement. The arbitration agreement states, in pertinent part:

> What about debt collections? We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. . . . You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

Card Agreement at 4. In other words, the Card Agreement specifically provided that Midland Funding, as Citibank's assignee, would not bring a debt collection action before an arbitrator, but that Plaintiff was entitled to compel arbitration of the action—which he apparently did not. Defendants followed this express command, and so cannot have acted "inconsistently" with their right to arbitrate. Moreover, the case law makes clear that a party does not waive its right to arbitrate simply by litigating an unrelated dispute. "The mere filing of a lawsuit in state court to collect on a debt does not mean that the debt collector cannot then compel arbitration if the debtor later brings suit regarding different claims." *Davis*, 2015 WL 913392, at *7. Indeed, a party may even engage in litigation activities as to the same claim that the party later seeks to arbitrate so long as those activities "do not evince a decision to take advantage of the judicial forum." *Newirth by & through Newirth v. Aegis Senior Communities*, LLC, 931 F.3d 935, 941 (9th Cir. 2019).

The Court therefore finds that Plaintiff has not met the "heavy burden" of proving waiver.

**D. Summary**

Having found that a valid agreement to arbitrate exists and applies to Plaintiff's account, that all of the Defendants are entitled to enforce that agreement, and that Defendants have not waived their rights to arbitrate, the Court GRANTS Defendants' motions to compel arbitration.

In so doing, the Court does not reach the question of whether the arbitration agreement contains a class action waiver precluding class arbitration of Plaintiff's class allegations. *See*

Case No. 19-CV-01141-LHK
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND STAYING CASE

H&H Def. Mot. to Compel at 12 (asking the Court to strike Plaintiff's class allegations pursuant to Federal Rule of Civil Procedure 12(f)). That question is properly for the arbitrator to decide, pursuant to the Card Agreement's delegation of all claims regarding the "application, enforceability, or interpretation of this Agreement and this arbitration provision" to the arbitrator. *See Shierkatz Rllp v. Square, Inc.*, No. 15-CV-02202-JST, 2015 WL 9258082, at *12 (N.D. Cal. Dec. 17, 2015) (enforcing delegation provisions in putative class actions without deciding the enforceability of the class waiver); *Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2015 WL 1738017, at *7 (N.D. Cal. Apr. 8, 2015) (concluding defendant's request to enforce the class action waiver "is an issue for the arbitrator to address" under the broad and general delegation clause); *see also Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 6 (2d Cir. 2013) ("Because the parties clearly and unmistakably intended for the arbitrator to decide the gateway issue of the enforceability of the class action waiver, the district court was not free to decide that question for itself.").

**E. Stay**

Defendants have moved for a stay of this action until the arbitration proceeding is completed. *See* Midland Def. Mot. to Compel at 17; H&H Def. Mot. to Compel at 14. The FAA provides that when a court is satisfied that issues involved in a lawsuit are referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Ninth Circuit has confirmed that this provision "requires that the court stay judicial proceedings until the matter has been arbitrated according to the terms of the arbitration agreement." *Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848 F.2d 130, 133 (9th Cir. 1988). In light of the Court's grant of Defendants' motions to compel arbitration, Defendants' request to stay the instant action pending arbitration is GRANTED.

**F. Other Motions**

The Court's decision as to the Motions to Compel Arbitration also resolves two other pending motions in this case. First, on May 1, 2019, Plaintiff filed a Motion to Strike in which

United States District Court
Northern District of California

1  Plaintiff seeks to strike all affirmative defenses from the Midland Defendants' Answer to the

2  Complaint. ECF No. 27. In light of the Court's conclusion that arbitration is warranted, the

3  Motion to Strike is DENIED as moot.

4  Second, the Midland Defendants filed a Motion to Stay Proceedings Pending the Court's

5  Ruling on Motion to Compel Arbitration on July 2, 2019. ECF No. 46. As the Court has now

6  ruled on the Motion to Compel Arbitration referred to therein, the Motion to Stay is DENIED as

7  moot.

8  **IV.    CONCLUSION**

9  For the foregoing reasons, the Court GRANTS Defendants' motions to compel arbitration

10  and stays the case pending arbitration. The Clerk shall administratively close the case file. This is

11  an internal administrative procedure that does not affect the rights of the parties.

12  Defendant is required to file quarterly reports with the Court on the status of the arbitration

13  proceedings beginning January 6, 2019.

14  The Court DENIES as moot Plaintiff's Motion to Strike, ECF No. 27, and Defendant's

15  Motion to Stay Proceedings Pending the Court's ruling on Motion to Compel Arbitration, ECF

16  No. 46.

17  **IT IS SO ORDERED.**

18  Dated: September 26, 2019

19

20  LUCY H. KOH
    United States District Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California